## THE KALFARLI.

(District Court, E. D. New York. February 3, 1920.)

MARITIME LIENS ⬅⇒59—BELIEF THAT LIBELANT ACTED FOR AGENT NO DEFENSE TO SUIT FOR REPAIRS.

That the master of a ship, in making a contract with libelant for repairs thereon, believed that libelant was acting as agent for another, instead of for himself, as was the fact, *held* not a defense to a suit to enforce a lien for the work actually done by libelant.

In Admiralty. Suit by Anton Anderson against the steamship Kalfarli. Decree for libelant.

Thomas J. Cuff, of New York City, for libelant.

Bullowa & Bullowa, of New York City (H. L. Cheyney, of New York City, of counsel), for claimant.

CHATFIELD, District Judge. The libelant was formerly a representative or solicitor of work for one Andrew Olsen, who did an extensive business in repairing ships at Brooklyn. When Anderson left Olson's employ, he went into business for himself, and shortly thereafter met the captain of the Kalfarli, at Norfolk, Va. An arrangement was later entered into for repairs to the boilers of the Kalfarli, and the work was done when the vessel reached Brooklyn.

The testimony shows that the captain of the vessel was ill while the work was being done, and finally objected to the amount of the claim presented, saying that he would not pay the bill unless it was O. K.'d by Mr. Olsen. Olsen refused to have anything to do with the bill, naturally, as he was not interested in it, and the captain then apparently objecting for the first time that Anderson was not acting as Olsen's agent, the bill has been contested by the claimant.

There may have been some lack of understanding on the part of the master of the ship as to the capacity in which Anderson was undertaking to do the work, and perhaps Olsen was rightfully displeased with Anderson for obtaining work from his old customers, without making plain to them the change in relation and that the work would not be done by Olsen's men or at his shop. But neither of these propositions is a defense to an action for work actually performed by Anderson as principal, on the orders of the master, even though the master mistakenly closed his eyes, disregarded the statements and facts, and thought he was an agent.

The claimant invokes the rule that the libelant must have clean hands and be guilty of no deception before he may come into equity for relief. But the present action is not in equity, but at law. Unless there was an absolute absence of contract, or of consent and acquiescence in the performance of the work on the ship, the ground of objection on the part of the third party as to business methods used in obtaining the work is not a defense to a charge for the work done. Even in equity the relation of third parties would not affect the equities between the libelant and the claimant, in an action on a lien for work and materials.

⬅⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The testimony produced upon the trial seemed to show in general that the work was well performed and that the amount of the bill, while large, due to increased wages and other causes, was not exorbitant or incorrect. The testimony also showed that the officers of the vessel saw the men at work and knew of what they were doing at the same time that men from Olsen's plant were doing other work upon the vessel, and that they must have understood that these workmen were not Olsen's men. In fact, there is some testimony to justify a finding that the captain agreed originally to the making of a contract with the libelant, but, after the work proved to be more expensive than he anticipated, sought to have Olsen act as arbitrator or umpire, and that Olsen not only refused to do so, but, because of business rivalry with the libelant, took sides with his old customer.

In this view of the case, the defense that no arrangement was made with the libelant would appear to be an afterthought. The libelant should have a decree, and the case sent to a commissioner, if further hearing is desired as to the amount.